United States Court of Appeals
Fifth Circuit

**F I L E D**

August 5, 2003

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
For the Fifth Circuit**

No. 01-10324

MEDICAL CARE AMERICA, INC.,

Plaintiff-Appellant,

VERSUS

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PENNSYLVANIA,

Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Texas

Before WIENER, BENAVIDES, and DENNIS, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

Following a precipitous decline in stock value, shareholders sued (among others) the director and officers of a Texas corporation formed through merger. After the suit settled, the corporation sued its insurer for coverage under its directors and officers liability policy. At issue was whether the policy covered the directors and officers' post-merger wrongful acts that were the same as or related to their pre-merger wrongful acts. A jury

1

concluded that there was no coverage. The corporation now appeals the district court's pretrial grant of partial summary judgment, its rulings on three motions for judgment as a matter of law at the close of the evidence, and its judgment on the verdict. We AFFIRM.

I.

A.

In the Summer of 1992, Medical Care International, Inc. ("MCI") and Critical Care America ("CCA") announced that they would merge to become wholly owned subsidiaries of a new company, Medical Care America, Inc. ("Medical Care"). The companies issued statements trumpeting expectations for Medical Care's increased earnings. On August 3, 1992, they filed a joint proxy-prospectus with the Securities and Exchange Commission ("SEC") and sent copies of the filing to their shareholders. The merger became final on September 9, 1992, at which time the directors of MCI and CCA became the directors of Medical Care.

In anticipation of the merger, Medical Care's risk management director, Theresa Major-Gable, consulted Larry Waldie, an insurance broker employed by Marsh & McLennan, Inc. ("Marsh"), about purchasing directors and officers ("D&O") liability insurance for Medical Care "going forward" from the date of the merger. In conjunction with this consultation, Medical Care appointed Marsh its exclusive agent of record. Acting on Medical Care's behalf, Waldie solicited quotes from several insurance companies, including National Union Fire Insurance Company ("National Union"). Major-

2

Gable subsequently instructed Waldie to bind National Union's quote. On September 4, 1992, National Union sent Waldie a letter that represented a temporary conditional binder outlining its agreement to provide Medical Care with $10 million worth of D&O coverage from September 9, 1992, to September 9, 1993. The temporary conditional binder conditioned coverage on National Union's receipt, review, and acceptance of certain information from Medical Care, including a completed application. It explained that the policy would be issued with ten endorsements, including one for "prior acts as of September 9, 1992."[1] Waldie summarized the temporary conditional binder in a separate binder ("Binder") he sent to Major-Gable on September 15, 1992. The Binder indicated that the policy would exclude "all prior acts prior to policy inception date." On September 28, 1992, Medical Care satisfied the conditions of the temporary conditional binder.

B.

The pre-merger expectations for Medical Care proved overly optimistic, and on September 25, 1992, the new company announced flat earnings. The announcement caused share value to plummet over 50% in one day, at which point the New York Stock Exchange suspended trading of Medical Care stock. In response, at least 15

---

[1] Prior to the merger, CCA maintained D&O insurance through the Chubb Group of Insurance Companies. Its coverage continued through September 9, 1992. It also purchased a "runoff" policy that extended the reporting period for claims regarding pre-merger acts. MCI had no D&O coverage for acts prior to September 9, 1992.

shareholder class action lawsuits were filed against Medical Care, CCA, MCI, and the directors and officers. The lawsuits were consolidated into a single action in the United States District Court for the Northern District of Texas. The consolidated suit alleged violations of §§ 10(b)and 20(a) of the Securities Exchange Act of 1934[2] and of SEC Rule 10b-5.[3] The complaint alleged that the defendants made misrepresentations and failed to make necessary disclosures in public statements and filings.

On January 30, 1993, National Union issued the D&O liability policy that Medical Care had applied for the previous September. Endorsement #7 of the policy provided:

> In consideration of the premium charged, it is hereby understood and agreed that this policy only provides coverage for Loss arising from claims for alleged Wrongful Acts occurring on or after September 9, 1992 and prior to the end of the Policy Period and otherwise covered by this policy. <u>Loss(es) arising out of the same or related Wrongful Act(s) shall be deemed to arise from the first such same or related Wrongful Act.</u>

By letter dated January 27, 1993, National Union denied coverage for the claims asserted in the class action based on the related acts language of the second sentence of Endorsement #7. On March 9, 1993, the class action plaintiffs filed an amended complaint. National Union restated its denial of coverage by letter dated May

---

[2] 15 U.S.C. §§ 78j(b), 78t(a).

[3] 17 C.F.R. § 240.10b-5.

21, 1993, repeating its reliance on Endorsement #7.[4]

The shareholder suit was settled in principle pursuant to court-ordered mediation for $60 million and the full release of all claims asserted against the defendants. Medical Care advised National Union of the settlement, asking it to reconsider its denial of coverage and to participate in the settlement, which had not yet been funded or approved by the court. National Union reiterated its previous position. After the district court approved the settlement, the $60 million was paid to the class action plaintiffs and the claims against Medical Care, MCI, CCA, and their respective officers and directors were released. In February 1995, the defendants entered into an agreement that allocated responsibility for the $60 million settlement among five of the six defendants. Under that agreement, Medical Care owed a contribution to the settlement but its directors and officers, who were separate defendants in the shareholder suit, did not.[5] In May 1996, however, the defendants revised their allocation agreement, requiring Medical Care's directors and officers to contribute $10 million to the settlement.[6] Because Medical Care had indemnified

_____

[4] Meanwhile, in September of 1994, Medical Care was acquired by Columbia/HCA Healthcare Corporation.

[5] The agreement allocated sums as follows: MCI, $13.4 million; the directors of MCI, $10 million; CCA, $13.4 million; the directors of CCA, $10 million; and Medical Care, $13.4 million.

[6] The revised agreement allocated sums as follows: MCI, $10 million; the directors of MCI, $10 million; CCA, $10 million; the directors of CCA, $10 million; Medical Care, $10 million; and the

5

its directors and officers, it ultimately bore responsibility for that $10 million.

C.

Medical Care filed the present lawsuit in November 1996 after National Union denied coverage under the D&O policy. It stated claims for breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code.[7] The district court granted in part and denied in part the parties' competing motions for summary judgment. Of relevance to this appeal, the court ruled for Medical Care in holding that "the binder agreements are the controlling contracts of insurance at issue in this case"; ruled against Medical Care in finding that there was a triable issue as to whether National Union was estopped from relying on the related acts exclusion; and ruled for National Union in dismissing with prejudice Medical Care's extracontractual claims.

Medical Care's remaining claim for breach of contract was tried to a jury. At the close of the evidence, both parties filed motions for judgment as a matter of law ("JMOL"). The court denied Medical Care's motion in toto. Of relevance here, it held that Medical Care had not shown that it was due coverage as a matter of law. The court granted National Union's motion in part, ruling

---

directors of Medical Care, $10 million.

[7] Tex. Ins. Code art. 21.21.

that the insurance contract included a "related acts" exclusion and that National Union was not equitably estopped from relying on that "related acts" exclusion.  The jury returned a take-nothing verdict for Medical Care, finding that Medical Care proved that its directors and officers had incurred loss arising from the shareholders' claims about their alleged wrongful acts occurring on or after September 9, 1992, and that Medical Care had indemnified its directors and officers for such loss.  The jury found, however, that National Union proved that all the directors' and officers' wrongful acts occurring after September 9, 1992, were the same as or related to wrongful acts occurring prior to September 9, 1992.

After the court denied its motion for a new trial and its renewed motion for JMOL, Medical Care appealed.

## II.

We review summary judgment de novo, following the same standard applied by the district court.[8]  Summary judgment is appropriate only if the movant demonstrates that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of law.[9]

---

[8] GeoSouthern Energy Corp. v. Chesapeake Operating Inc., 274 F.3d 1017, 1020 (5th Cir. 2001).

[9] Fed. R. Civ. P. 56(c).

We also review judgment as a matter of law de novo.[10] JMOL is appropriate when "a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue."[11] In reviewing the record, we draw all reasonable inferences in favor of the nonmovant, make no credibility determinations, and do not weigh the evidence.[12] We give credence to evidence supporting the movant only if it "is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." If, after reviewing the evidence in this manner, "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of [JMOL] is proper."[13] But "if there is substantial evidence opposed to [JMOL], that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, [JMOL] should be

---

[10] Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 188 F.3d 278, 285 (5th Cir. 1999).

[11] Fed. R. Civ. P. 50(a)(1).

[12] Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

[13] Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), overruled on other grounds by Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997) (en banc).

8

denied."[14]

III.

A.

The parties agree that under Texas law an insurance binder provides coverage according to the terms and provisions of the ordinary form of the contemplated policy.[15]  In this case, the Binder expressly states that the policy would exclude coverage of "all prior acts prior to policy inception date," but it is silent as to coverage of subsequent acts that are related to the prior acts.  At issue is whether the ordinary form of prior acts endorsement used in D&O policies contains language excluding coverage of subsequent related acts.[16]  At the close of evidence, the district court granted a partial JMOL for National Union on this issue, finding as a matter of law that Endorsement #7, the prior acts endorsement containing related acts language that was

---

[14] Id. ("A mere scintilla of evidence is insufficient to present a question for the jury.").

[15] See Great Am. Ins. Co. of N.Y. v. Maxey, 193 F.2d 151, 152 (5th Cir. 1951) ("The terms and provisions which control in the construction of the coverage afforded by a binder are those contained in the ordinary form of policy usually issued by the company at the time upon similar risks." (further citation omitted)); Ranger County Mut. Ins. Co. v. Chrysler Credit Corp., 501 S.W.2d 295, 298 (Tex. 1973) ("As long as a binder is in effect, the insured may look to the form of the contemplated policy for coverage, duration, cancellation, and other terms." (further citation omitted)).

[16] Under Texas law, National Union bore the burden of establishing that a policy exclusion applies. See Tex. Ins. Code art. 21.58(b); see also Guaranty Nat'l Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir. 1998).

9

used in the policy issued to Medical Care in January 1993, "was the standard form normally or ordinarily issued by National Union" in its D&O liability policies. The consequence of this ruling under Maxey and Ranger County was to make the related acts exclusion a term of the Binder. We agree that National Union met its burden under Rule 50(a) and that JMOL was appropriate on this issue.

Two disinterested witnesses testified that National Union's standard practice, like that of the industry, was to use related acts language in prior acts endorsements. Lawrence Waldie, the insurance broker who served as Medical Care's agent, testified that Endorsement #7 was in a form that was the "customary and normal form of a prior acts endorsement issued by National Union" and other carriers writing D&O policies under similar circumstances.[17] Hence, he was not surprised that it contained related acts language. On the contrary, he agreed that Endorsement #7 was the type of prior acts endorsement that he had anticipated when he wrote out the Binder in September 1992. He testified that he had no recollection of ever negotiating a prior acts endorsement that did not contain related acts language on behalf of any client with either National Union or any other insurer. Furthermore, he could not recall ever seeing a D&O policy with a prior acts endorsement

---

[17] Although Waldie also testified that D&O policies written by different companies often used different verbiage, he explained that "probably 80 to 90 percent of the terms and conditions would be very, very similar as far as the exclusion and the basic insuring agreements."

that did not contain related acts language.  Indeed, he was not aware that any such policy was available in the industry.

Anthony Codding testified similarly.  Codding, a former assistant division manager of National Union's D&O division, was involved in underwriting between 5000 and 8000 D&O policies at National Union.  He testified that in his experience National Union had never used a prior acts endorsement that did not include related acts language.  He explained that, based on his experience, he would interpret a reference in a binder to a prior acts endorsement to mean that the subsequently issued policy would include a prior acts endorsement containing related acts language. In sum, he testified that the standard form used in 1992 by National Union for prior acts endorsements contained language "such as the second sentence of endorsement number 7"-that is, related acts language.

Through Codding, Medical Care introduced evidence that National Union had seven different forms of prior acts endorsements available for use by its underwriters.  One of these did not contain related acts language.  Codding testified, however, that he could not recall a time when National Union had used that lone form.  He explained that "[i]t is not a standard endorsement" and is not "ordinarily and customarily used by National Union on D&O policies."

In addition to Waldie and Codding, Elliot Rothman appeared on behalf of National Union as an expert witness in the area of D&O

liability insurance. Rothman testified that the standard industry practice was to include related acts language in prior acts endorsements.[18]

Medical Care offered no evidence to contradict the testimony of Waldie, Codding, or Rothman. Instead, it argued that the lone endorsement form that did not contain related acts language and the testimony that all D&O policies were different and subject to negotiation created a triable issue about the scope of coverage under the Binder. But neither piece of evidence supports a reasonable inference that the customary and standard form of D&O liability insurance issued by National Union did not contain related acts language. There is no evidence that National Union ever used the lone endorsement form that does not contain related acts language. And there is no evidence that National Union ever issued a D&O policy with a prior acts endorsement that did not contain related acts language. Indeed, Codding testified that he could not recall a single instance when a broker or client negotiated the related acts language out of a prior acts endorsement.

After carefully reviewing the record, we conclude that the evidence and inferences point so strongly and overwhelmingly in

---

[18] Robert Lang, an expert in the area of D&O insurance law, also testified that in 20 years of practice he had only seen D&O policies that used prior acts exclusions that contained related acts language. Because National Union is one of his principal clients, Lang cannot be considered a disinterested witness.

favor of a finding that National Union's standard prior acts endorsement normally or ordinarily used in its D&O liability policies contained related acts language that JMOL in National Union's favor is warranted.

B.

Medical Care asserts that National Union was equitably estopped from relying on the related acts language to deny coverage. Under Texas law, a plaintiff relying on the doctrine of equitable estoppel must show:

> (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations.[19]

"The burden of proving an estoppel and the essential elements thereof is on the party asserting it and the failure to prove any one or more of the elements is fatal."[20] At the close of evidence, the district court granted a partial JMOL for National Union on the applicability of equitable estoppel to the case. The court concluded that Medical Care had presented legally insufficient evidence to establish the first or fourth elements. Because no facts or inferences support a finding of those two elements, we

---

[19] Johnson & Higgins v. Kenneco Energy, 962 S.W.2d 507, 515-16 (Tex. 1998) (citing Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483, 489 (Tex. 1991)).

[20] Barfield v. Howard M. Smith Co. of Amarillo, 426 S.W.2d 834, 838 (Tex. 1968).

13

agree that JMOL for National Union was appropriate as to this issue.

Medical Care asserts that National Union concealed the true scope of the prior acts endorsement by omitting from its binder any reference to related acts. As we discussed above, the uncontroverted evidence shows that the Binder indicated that the policy would include a prior acts endorsement; that a prior acts endorsement used in the context of a D&O policy would normally and ordinarily be understood to contain related acts language; and that National Union's standard prior acts endorsement normally and ordinarily contained related acts language. There is no positive evidence that National Union misrepresented or concealed coverage terms. Because the evidence points so strongly and overwhelmingly in favor of National Union, we conclude that a jury could not reasonably infer that National Union had anything to conceal, intended to conceal anything, or in fact concealed anything from Medical Care. Because Medical Care failed to establish the first element of equitable estoppel, summary judgment was appropriate.

Furthermore, under Texas law, "[a] party claiming an estoppel must have used due diligence to ascertain the truth of the matters upon which he relies in acting to his detriment."[21] There is no evidence that Medical Care or any of its representatives made any inquiry of Marsh or National Union as to either the scope or effect

---

[21] Barfield, 426 S.W.2d at 838.

14

of the prior acts endorsement.  Nor is there evidence that Medical Care lacked the means to make such an inquiry or was somehow prevented from doing so.  On the contrary, Waldie testified that he encouraged Major-Gable to contact him with questions about the Binder.  In short, our review of the record reveals that it cannot reasonably be inferred that Medical Care used due diligence to ascertain the scope or effect of the prior acts endorsement or that Medical Care lacked the means of obtaining knowledge of the extent of the prior acts exclusion.  Thus, Medical Care also failed to establish the fourth element of equitable estoppel, further demonstrating that summary judgment was warranted.[22]

## C.

At the close of evidence, Medical Care moved for JMOL on the issue of whether the policy provided coverage for the shareholders' claims of wrongdoing on the part of the company's directors and officers.  It argued that JMOL was appropriate because the shareholder suit alleged wrongful acts occurring on or after the

---

[22] Medical Care argues that it had no reason to make further inquiry into the scope of the coverage because it had requested going forward coverage and the Binder only indicated that the policy would exclude coverage for prior acts.  Medical Care's argument is premised on an unfounded assumption about the meaning of the Binder.  Considering that insurance binders by design only summarize a policy to be issued, Medical Care's assumption about the scope of coverage offered by its $10 million insurance policy cannot reasonably be said to have constituted the exercise of due diligence.  Moreover, Waldie, Medical Care's agent, testified that he fully anticipated that the policy would contain a related acts exclusion.  Hence, Medical Care cannot establish detrimental reliance.

merger;[23] such acts were covered by the policy; and such acts were not related to prior wrongful acts so as to be excluded by the prior acts endorsement.  The district court denied the motion.

On appeal, Medical Care does not directly challenge the sufficiency of the evidence supporting the verdict.  Instead, it presents a legal argument for indemnification coverage.  Its argument, however, rests on faulty premises.  First, it is not true, as Medical Care contends, that the coverage issue must be resolved by looking at the <u>allegations</u> of the underlying shareholders suit.  Under well-established Texas law, an insurer's <u>duty to defend</u> its insured is determined by considering the allegations in the underlying litigation in the light of the policy provisions.[24]  But National Union had no duty to defend Medical Care by express provision of the policy.[25]  Instead we must look to the rule governing an insurer's <u>duty to indemnify</u> its insured.  Under Texas law, this duty depends on the actual facts of the underlying

---

[23] The shareholders made alternative allegations.  The other alternative was that the statements were materially false and misleading when made.

[24] <u>Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.</u>, 387 S.W.2d 22, 24 (Tex. 1965).

[25] It is true, as Medical Care states, that an exception to the general rule holds an insurer to the terms of a settlement it wrongfully refused to defend.  This exception is irrelevant here because National Union had no duty to defend Medical Care. Furthermore, even under this exception, an insurer is "not estopped from contesting coverage of [its] liability."  <u>Enserch Corp. v. Shand Morahan & Co.</u>, 952 F.2d 1485, 1493 (5th Cir. 1992) ("[C]overage . . . cannot be created <u>ex nihilo</u> by estoppel.").

16

litigation.[26]

Second, Medical Care argues that indemnification coverage is required based on a selective reading of the policy. Because the policy defines "Loss" to mean "settlements," it argues that there must be coverage of settlements arising from <u>claims</u> of alleged wrongdoing.[27] But its reading fails to account for the limitations on the definition of "Loss" imposed by Endorsement #7, which clearly provides that not all loss is covered. In particular, the prior acts endorsement expressly excludes loss arising from wrongful acts related to prior wrongful acts predating the coverage period:

> [T]his policy only provides coverage for Loss arising from claims for alleged Wrongful Acts occurring on or after September 9, 1992 . . . . Loss(es) arising out of the same or related Wrongful Act(s) shall be deemed to arise from the first such same or related Wrongful Act.

By its very terms, therefore, the policy does not cover settlements arising from claims of alleged wrongdoing that is the same as or related to alleged wrongdoing occurring before September 9, 1992.

Once Medical Care's faulty premises are corrected, it is clear

---

[26] <u>Id.</u> at 25.

[27] The basic coverage provision of the policy provides for coverage of "Loss arising from . . . claims":

This policy shall reimburse [Medical Care] for Loss arising from any claim or claims which are first made against the Directors or Officers . . . for any alleged Wrongful Act in their respective capacities . . . .

17

that JMOL was not appropriate because it remained to be determined whether Medical Care incurred a "Loss," and, if so, whether that loss arose from wrongdoing that was related to wrongdoing occurring before the merger.  Later, of course, the jury found that Medical Care had incurred a "Loss" but that the loss was not covered because it arose from wrongdoing that was the same as or related to prior wrongdoing.  Because Medical Care does not challenge the jury's findings on appeal, it concedes that the verdict rests on a legally sufficient evidentiary basis.

D.

Finally, Medical Care contends that the district court erred in granting partial summary judgment for National Union and dismissing its extracontractual claims alleging breach of the duty of good faith and fair dealing and violation of article 21.21 of the Texas Insurance Code.

1.

With regard to the common law claim, the parties dispute whether National Union owed a duty of good faith under the circumstances.  Under Texas law, an insurer owes a duty of good faith in handling its insured's own claim of loss.[28]  This duty arises from the special relationship that exists between the

---

[28] Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456, 459 (5th Cir. 1997) (citing Arnold v. National County Mut. Fire Ins. Co., 725 S.W.2d 165, 167 (Tex. 1987)).

18

insurer and its insured.[29] An insured, however, has no claim for bad faith premised on the insurer's investigation or defense of a claim brought against it by a third party.[30] This is because "an insured is fully protected against his insurer's refusal to defend or mishandling of a third-party claim by his contractual and Stowers rights," which give rise to causes of action sounding in contract and negligence.[31]

In this case, Medical Care does not allege that National Union acted in bad faith in investigating or defending the shareholders' claims of loss. Indeed, it admits that National Union had no duty to defend the shareholder suit. Medical Care alleges instead that National Union acted in bad faith in handling its own claim of loss (i.e., reimbursement of its indemnification of the $10 million allocated to its directors and officers following the settlement of the shareholder suit). Its allegation concerns the relationship between it and National Union—not between National Union and the shareholders. Thus, we will treat Medical Care's claim as a first-

---

[29] Arnold, 725 S.W.2d at 167 ; see also Universe Life Ins. Co. v. Giles, 950 S.W.2d 48, 53 n.2 (Tex. 1997) ("A first-party claim is one in which an insured seeks recovery for the insured's own loss.").

[30] See Maryland Ins. Co. v. Head Indus. Coatings and Servs., Inc., 938 S.W.2d 27, 27-28 (Tex. 1996); see also Giles, 950 S.W.2d at 53 n.2 (explaining that a third-party claim is that "in which an insured seeks coverage for injuries to a third party").

[31] Maryland Ins., 938 S.W.2d at 28-29. Under Stowers Furniture Co. v. American Indem. Co., 15 S.W.2d 544 (Tex. Comm'n App. 1929), an insurer must use ordinary care in considering an offer of settlement.

19

party claim to which the duty of good faith applies.

"[A]n insurer breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear."[32] "Evidence that shows only a bona fide coverage dispute does not rise to the level of bad faith."[33] Thus, "[a]s a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered."[34] Here, the evidence overwhelmingly shows that there was a bona fide coverage dispute, which National Union subsequently won. In the absence of coverage, summary judgment for National Union was appropriate as to Medical Care's bad faith claim.

2.

Medical Care's statutory claims arise under article 21.21 § 16(a) of the Texas Insurance Code, which allows an individual who has been damaged by "unfair methods of competition or unfair or deceptive acts or practices in the business of insurance" to bring a statutory cause of action. Medical Care alleged that National Union engaged in four unfair or deceptive practices:

> (a) National Union misrepresented the benefits of the Policy to Medical Care and its officers and directors in violation of [Texas Insurance Code] Art. 21.21 § 4(1).

---

[32] State Farm Fire & Cas. Co. v. Simmons, 963 S.W.2d 42, 44 (Tex. 1998); see also Giles, 950 S.W.2d at 55 ("[A]n insurer will be liable if the insurer knew or should have known that it was reasonably clear that the claim was covered.").

[33] Simmons, 963 S.W.2d at 43.

[34] Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995).

(b) National Union made untrue and misleading statements regarding the coverage it would provide pursuant to the Policy, in violation of [Texas Insurance Code] Art. 21.21 § 4(2).

(c) National Union engaged in unfair settlement practices in violation of [Texas Insurance Code] Art. 21.21 § 4(10).

(d) National Union misrepresented the Policy by making untrue statement of material fact, failing to state material facts, or making misleading statements to Medical Care and its officers and directors in violation of [Texas Insurance Code] Art. 21.21 § 4(11).

Each of these claims is time-barred. Article 21.21 § 16(d) imposes a two-year limitations period on statutory claims and states that a claim accrues when the unfair practice occurred or should have been discovered:

All actions under this Article must be commenced within two years after the date on which the unfair method of competition or unfair or deceptive act or practice occurred or within two years after the person bringing the action discovered or, in the exercise of reasonable diligence, should have discovered the occurrence of the unfair method of competition or unfair or deceptive act or practice.[35]

The misrepresentations of the first, second, and fourth statutory claims allegedly occurred before coverage was denied on May 21, 1993. Likewise, the unfair settlement practices alleged in the third statutory claim occurred before the denial of coverage. It is self-evident that Medical Care should have discovered the occurrence of these allegedly unfair or deceptive practices by May

---

[35] See also Johnson & Higgins of Tex. v. Kenneco Energy, 962 S.W.2d 507, 515 (Tex. 1998) (explaining that as a general rule, a cause of action accrues and the limitations period begins when coverage is denied).

21, 1993.  Therefore, because Medical Care did not sue until November 22, 1996, over three years later, its statutory claims are untimely.[36]  Summary judgment was warranted.

## IV.

For the foregoing reasons, we AFFIRM the judgment.

AFFIRMED.

---

[36] <u>All-Tex Roofing, Inc. v. Greenwood Ins. Group</u>, 73 S.W.3d 412 (Tex. Ct. App. 2002), to which Medical Care looks for support, is distinguishable on the facts and on the applicable law.  It does not involve the Texas Insurance Code, a claim arising under that code, or the particular language of the statute of limitations imposed by that code on which our decision turns.