United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 11, 2004**

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
## for the Fifth Circuit

---

m 03-20592

---

ACE PROPERTY & CASUALTY INSURANCE COMPANY,

Plaintiff-Appellee,

VERSUS

DENISE DORISMOND,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas
m H-02-CV-4871

---

Before JONES, MAGILL,* AND SMITH,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:**

---

* Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

---

** Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Denise Dorismond appeals a summary judgment in favor of ACE Property & Casualty Insurance Company ("ACE"). Concluding that ACE's insured, Service Merchandise, breached a duty to ACE by not attempting to limit liability arising from Dorismond's original suit, we affirm.

## I.

In 1997, Dorismond was injured in a Service Merchandise ("Service") retail store. In 1999, Service filed for bankruptcy in Tennessee. Two months later, Dorismond sued Service in Texas state court.

As a result of the bankruptcy proceedings, Dorismond's suit was automatically stayed. Eventually, she agreed to seek only insurance proceeds and asked that the stay be lifted. The bankruptcy court allowed the suit to go forward on August 5, 2002.

ACE provided an excess insurance policy to Service at the time of Dorismond's injury, covering personal injury damages that exceeded $250,000. Service notified ACE of Dorismond's suit on August 2, 2002SSover five years after the original injury and over three years after the original suit was filed. Service also informed ACE that it did not intend to defend itself against Dorismond's state claim.[1]

Neither Service nor ACE appeared at trial, and the Texas court entered a default judgment in Dorismond's favor for $421,516.39. ACE sought a declaratory judgment, pursuant to 28 U.S.C. § 2201(a), regarding the amount it owed under its policy with Service. The district court entered summary judgment in favor of ACE and held that ACE did not owe any funds to Dorismond.

## II.

We review a summary judgment *de novo* and follow the same standard as did the district court. *See*, *e.g.*, *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 420 (5th Cir. 2003). "We likewise review matters of contract interpretation *de novo*." *HS Res., Inc., v. Wingate*, 327 F.3d 432, 440 (5th Cir. 2003). "Summary judgment is appropriate only if the movant demonstrates that there are no genuine issues of material fact and that it is entitled to a judgment as a matter of law." *Id.* We may affirm for any reason supported by the record, even if the district court did not rely on such a reason.[2] *LLEH, Inc. v. Wichita County, Tex.*, 289 F.3d 358, 364 (5th Cir.), *cert. denied*, 537 U.S. 1045 (2002). Because this diversity[3] action concerns the interpretation and application of an insurance contract, Texas substantive law applies. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

---

[1] Service's senior legal counsel sent ACE a letter that stated, "As Ms. Dorismond has waived any right to receive a distribution from [Service, it] does not intend to defend the personal injury case."

[2] The district court held that (1) Service breached a notice provision of the insurance policy by waiting three years to alert ACE of Dorismond's suit; and (2) Service abrogated its duty to ACE to limit liability arising from the suit. Because the second ground constitutes ample reason to affirm, we do not address the notice issue or ACE's contention that Service and Dorismond entered into a collusive agreement that violated Texas public policy.

[3] Because this case involves diverse litigants and an amount in controversy greater than $75,000, federal courts have jurisdiction under 28 U.S.C. § 1332(a)(1).

### III.

Service breached an implied duty to ACE by taking no action to mitigate damages arising from Dorismond's suit. ACE owed no duty to defend Service; Service had a duty to take some action to limit damages; and Service breached such a duty by not defending in Dorismond's suit.

First, ACE explicitly removed, through language in the contract, any possible duty it might have to defend Service. The policy stated that it "[did] not apply to defense, investigation, settlement, or legal expenses, or pre-judgment interest arising out of any 'occurrence' or offense." Although ACE retained the right "to assume from the insured the defense and control of any claim or 'suit,'" such intervention was contingent on ACE's *choice* to participate in the defense. A court may not compel an insurer to defend an insured when the insurer disavows, *in the contract*, any duty to provide a defense.[4]

Dorismond argues, however, that ACE exercised its right to intervene and should bear the costs arising from the default judgment.[5]

She points to an admission filed in Service's bankruptcy proceedings, wherein ACE stated that it would assume the defense of any outstanding personal injury claims. At the time of ACE's statement, however, the Texas court already had entered summary judgment in favor of Dorismond. Thus, with respect to Dorismond, nothing remained for ACE to defend.[6]

Secondly, Service had a duty to take some action to mitigate liability arising from Dorismond's suit. Texas courts and federal courts applying Texas law have made statements regarding the general duty of a insured to minimize legal liability.[7] Though these courts have not provided the precise contours of a insured's duty, the statements suggest that the insured must take some kind of minimum action to limit liability to the insurer.

Service's failure to act falls outside any reasonable expectations one may have of an insured. Rather than merely carrying out a bad defense or have some misfortune strike its

---

[4] *See, e.g.*, *St. Paul Guardian Ins. Co. v. Centrum GS, Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002) ("When the language of an insurance policy is not ambiguous, it is our duty to give the words used their plain meaning."); *Harville v. Twin City Fire Ins. Co.*, 885 F.2d 276, 279 (5th Cir. 1989) (applying Texas law and holding that, even if a primary insurer who otherwise owed a duty to defend the insured went into receivership, the excess liability insurer did not owe such a duty "under the terms of the contract").

[5] Dorismond maintains that "ACE assumed that duty to defend in it's [sic] admission in the Adversary Complaint in bankruptcy and therefore,

(continued...)

[5](...continued)
it had a duty to defend by its own creation."

[6] Dorismond also asserts that a settlement reached in the bankruptcy proceedings moots the current case. We disagree.

[7] *See, e.g.*, *Laster v. Am. Nat'l Fire Ins. Co.*, 775 F. Supp. 985, 995 (N.D. Tex. 1991) ("[Insurer] is at the mercy of the insured to see that proper steps are taken in [its] defense . . . . Implicit in an excess insurance contract of this kind is an obligation on the part of the insured to take reasonable steps to avoid legal liability . . . ."); *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996) ("In no event, however, is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer . . . .").

3

case,[8] Service consciously allowed the court to enter a default judgment. The only way it could have incurred more liability would have involved an incompetent and belligerent attorney who spurred the judge to enter numerous contempt citations.

Service deliberately decided not to take any action, as shown in its August 2, 2002, letter to ACE. *Supra* note 1. Service's inaction provides an egregious example of avoiding "a fully adversarial trial" or even some sort of aggressive settlement negotiation. *Gandy*, 925 S.W.2d at 714. Such inaction constitutes a breach of Service's duty to its insurer.

Because Service breached its duty to mitigate damages, ACE has no obligation to pay Dorismond's default judgment. The summary judgment is AFFIRMED.

---

[8] In *Laster*, for example, the insured at least began with an attorney but then mishandled that attorney's withdrawal from the case. *Laster*, 775 F. Supp. at 996-98.

4