NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SMITH & NEPHEW, INC.,**
*Plaintiff-Appellee,*

v.

**ARTHREX, INC.,**
*Defendant-Appellant.*

---

2010-1427

---

Appeal from the United States District Court for the Eastern District of Texas in case No. 07-CV-0335, Judge T. John Ward.

---

Decided: June 20, 2011

---

MARK G. MATUSCHAK, Wilmer, Cutler, Pickering, Hale and Dorr, LLP, of Boston, Massachusetts, argued for plaintiff-appellee. With him on the brief were JAMES M. DOWD, of Los Angeles, California; and DAVID L. CAVANAUGH, of Washington, DC. Of counsel was PAUL B. KELLER, of New York, New York.

ANTHONY P. CHO, Carlson, Gaskey & Olds. P.C., of Birmingham, Michigan, argued for the defendant-

appellant.  Of counsel on the brief were STEVEN C. SUSSER and RODGER D. YOUNG, Young & Susser, P.C., of Southfield, Michigan; and ERIC M. ALBRITTON, Albritton Law, of Longview, Texas.  Of counsel was DEBRA ROCHELLE COLEMAN, Albritton Law, of Longview, Texas.

---

Before RADER, *Chief Judge*, and PLAGER and MOORE, *Circuit Judges*.

MOORE, *Circuit Judge*.

Arthrex, Inc. (Arthrex) appeals the United States District Court for the Eastern District of Texas's denial of its motions for Judgment as a Matter of Law (JMOL) after a jury found Arthrex liable for direct and indirect infringement for the sale of its RetroButton® device.  Because Smith and Nephew, Inc. (S&N) presented insufficient evidence at trial to support a finding that the RetroButton® device infringed Claim 8 of U.S. Patent No. 5,645,588 ('588 patent), we *reverse*.

## BACKGROUND

On August 7, 2007, S&N filed a complaint in the Eastern District of Texas against Arthrex alleging infringement of Claim 8 of the '588 patent based on Arthrex's sale of the RetroButton® device.  The '588 patent describes and claims a surgical device used in reconstructive surgery of the anterior cruciate ligament (ACL).  Claim 8 reads as follows:

> A graft attachment device for attaching an anterior cruciate ligament graft to a bone wherein a passage is drilled through the bone for attachment thereto, comprising:

a graft connection element comprising a sling member having a width sufficient to carry the graft during and after implantation;

an elongated body sized to pass through the passage in the bone and having an upper surface, a lower surface, a leading end, and a trailing end, each said end having a hole defined by said elongated body configured to carry a filament, a portion of said body disposed between said hole in said leading end and said hole in said trailing end being configured for attaching to said body the graft connection element and enabling said body to rotate relative to the graft from an initial insertion position, along an axis substantially parallel to the graft, to a final fixation position transverse to the graft to secure the graft relative to the bone; and

filament threaded through said hole in said leading end and said hole in said trailing end.

The district court issued a claim construction order on November 20, 2009. J.A. 1-47. The district court construed the term "graft connection element" to mean "material that supports the graft that is located between the hole in the leading end and the hole in the trailing end and is distinct from the material located in said holes." J.A. 17. Further, the district court determined that the "graft connection element includes at least a sling member." J.A. 20. The district court construed the term "sling member" as a "loop of material that supports the graft." J.A. 20.

Following claim construction, Arthrex filed a motion for summary judgment of no infringement. Arthrex's motion for summary judgment focused on two arguments. First, Arthrex argued that its RetroButton® device did not contain a "trailing filament" as required by Claim 8. J.A. 57. Second, Arthrex argued that the RetroButton® did not contain holes in either the "trailing end" or the "leading end" as required by Claim 8. J.A. 58.

The district court granted Arthrex's motion for summary judgment regarding literal infringement. The district court determined "that as a matter of law the accused device has no hole in the 'leading end' or 'trailing end' and has no 'filament' threaded through a hole in the 'leading end' or 'trailing end.'" J.A. 63. The district court, however, determined that there were genuine issues of material fact regarding infringement under the doctrine of equivalents, including: 1) whether the RetroButton® device's loop is equivalent to the claimed trailing filament; and 2) whether the device's tear drop-shaped holes are the equivalent of the claimed holes in the trailing end and the leading end. J.A. 64. Further, the district court determined that neither prosecution history estoppel nor the all-elements rule precluded S&N's arguments regarding infringement under the doctrine of equivalents. J.A. 64.

Following a five-day trial, the jury returned a verdict finding that the RetroButton® device directly infringed Claim 8 of the '588 patent and that Arthrex induced infringement of Claim 8. The jury awarded $4,713,000 in damages.

After trial, Arthrex filed renewed JMOL motions for noninfringement, invalidity, and damages. On June 15, 2010, the district court denied the motions and granted S&N's motion for a permanent injunction. The district court later stayed the permanent injunction pending

appeal, J.A. 99, finding that "the facts and legal issues of this case are particularly close on the issue of infringement." J.A. 97. Arthrex appeals and we have jurisdiction pursuant to 28 U.S.C. § 1295.

## DISCUSSION

Because the denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, we review it under the law of the regional circuit. *Summit Tech., Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). The Fifth Circuit reviews the denial of JMOL *de novo*. *Med. Care Am., Inc., v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 420 (5th Cir. 2003). "JMOL is appropriate when 'a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for the party with respect to that issue.'" *Id.* (quoting Fed. R. Civ. P. 50(a)(1)). S&N, as the plaintiff, bears the burden of proof to show the presence of every element or its equivalent in the RetroButton® device. *See, e.g.*, *Uniloc USA v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011). Infringement is a question of fact that we review for substantial evidence. *Id.*

Arthrex argues that it is entitled to JMOL because S&N failed to offer any evidence at trial that the Retro-Button® contains "a graft connection element comprising a sling member." Arthrex argues that S&N failed to show that a "sling member" is a part of the "graft connection element" but instead attempted to prove the opposite – that the "graft connect element" is a part of the "sling member."

S&N contends that "Arthrex's argument is a distinction without a difference." Appellant's Br. 41. S&N argues that we should affirm the district court's denial of JMOL because it presented sufficient evidence at trial for

the jury to find that the RetroButton® has both a "sling member" and a "graft connection element" as defined by the district court. Dr. Sebastianelli's (S&N's expert witness) cross-sectional schematic of the RetroButton® device best illustrates S&N's infringement contentions regarding these key limitations:



J.A. 2778. As shown in the schematic, S&N contends that the entire loop of material that supports the graft is the claimed "sling member" and that the three strands of material at the bottom portion of the loop are the claimed "graft connection element" (abbreviated as GCE). Under S&N's theory, the "graft connection element" is a portion of the "sling member," but the "graft connection element" does not include the entire "sling member" structure.

We agree with Arthrex. S&N's theory of infringement is inconsistent with the plain language of Claim 8. As the district court correctly noted in its claim construction

order, "Claim 8 of the '588 patent states, in relevant part, 'a graft connection element comprising a sling member . . .' Thus, the graft connection element includes at least a sling member." J.A. 20. Given the district court's construction of "sling member" (which neither party appeals), the "graft connection element" must include a "loop of material that supports the graft." J.A. 20. If the Retro-Button® device's graft connection element is limited to the three strands of material between the holes (as S&N contends), then it does not include "a loop of material."

S&N failed to present any evidence that the Retro-Button® device contained the claimed "graft connection element comprising a sling member [a loop of material]." Additionally, S&N offered no evidence that the "graft connection element" included the equivalent of a "sling member." *See* Appellee's Br. 23 ("[T]he only claim requirements that were proven equivalently were the location of the holes and the district court's requirement that the 'trailing filament' be 'distinct' from the material used to support the graft."); *see also* Oral Argument 19:22-19:53.

Claim 8 further requires "a portion of said body . . . being configured for attaching to said body the graft element connection." '588 patent col.7 ll.13-17. The specification of the '588 patent teaches that the "graft connection element" attaches directly to this portion of the body. *See, e.g.*, '588 patent col.2 ll.1-4 ("The body further defines at least one means for attaching to the body . . . a graft connection element which is in turn connected to the graft."). The preamble of the '588 patent recognizes this relationship: "[t]he body further defines at least one element for attaching to the body either a graft or a graft connection element which is in turn connected to the graft." The embodiments of the invention described in the '588 patent indicate that the "graft connection element" is

directly attached to the "portion of said body" between the holes in the leading and trailing ends. *See, e.g.*, *id*. col.6 ll.13-17. Under the district court's construction (which neither party appeals) the "graft connection element" must be located "between the hole in the leading end and the hole in the trailing end" and it must be "distinct from the material located in said holes." J.A. 17. In other words, it must attach to "a portion of said body disposed between said hole in said leading end and said hole in said trailing end."

As illustrated in Dr. Sebastianelli's cross-sectional schematic above, the RetroButton® device's alleged "graft connection element" does not attach to *any* portion of the device's body. Even if Claim 8 is broad enough to allow for indirect attachment, under S&N's theory of infringement the "graft connection element" does not attach to the portion of the body between the holes in the trailing and leading ends as the claim requires. S&N's contention that the graft connection element of Claim 8 is satisfied by the three strands on the bottom portion of the sling is inconsistent with the plain language of the claim itself. Claim 8 expressly requires that the graft connection element include the loop of material (the sling) and that it attach to the portion of the body between the holes. The accused portion of the RetroButton® device (the three strands of material at the bottom of the sling) does not meet either of these requirements. Therefore, Arthrex has failed to offer substantial evidence to support its accusation that the RetroButton® device infringes Claim 8. Because there is no evidence of record supporting the jury's verdict that the RetroButton® infringes the '588 patent, JMOL is appropriate, and we must reverse. In light of this holding, we need not address Arthrex's other arguments on appeal.

**REVERSED**