NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

IN RE: PERSONALWEB TECHNOLOGIES LLC,

-------------------------------------------------

AMAZON.COM, INC., AMAZON WEB SERVICES, INC.,
*Plaintiffs-Appellees*

**v.**

PERSONALWEB TECHNOLOGIES LLC,
*Defendant-Appellant*

LEVEL 3 COMMUNICATIONS, LLC,
*Defendant*

-------------------------------------------------

PERSONALWEB TECHNOLOGIES LLC,
*Plaintiff-Appellant*

LEVEL 3 COMMUNICATIONS, LLC,
*Plaintiff*

**v.**

TWITCH INTERACTIVE, INC.,
*Defendant-Appellee*

2020-1566, 2020-1568, 2020-1569

Appeals from the United States District Court for the Northern District of California in Nos. 5:18-cv-00767-BLF, 5:18-cv-05619-BLF, 5:18-md-02834-BLF, Judge Beth Labson Freeman.

————————————

Decided:  August 12, 2021

————————————

STEPHEN UNDERWOOD, Glaser Weil Fink Howard Avchen & Shapiro LLP, Los Angeles, CA, argued for PersonalWeb Technologies LLC.  Also represented by LAWRENCE MILTON HADLEY; WESLEY WARREN MONROE, Stubbs Alderton & Markiles LLP, Sherman Oaks, CA.

J. DAVID HADDEN, Fenwick & West LLP, Mountain View, CA, argued for Amazon.com, Inc., Amazon Web Services, Inc., Twitch Interactive, Inc.  Also represented by THOMAS FOX, RAVI RAGAVENDRA RANGANATH, SAINA S. SHAMILOV; TODD RICHARD GREGORIAN, San Francisco, CA.

————————————

Before LOURIE, PROST\*, and REYNA, *Circuit Judges*.

LOURIE, *Circuit Judge*.

PersonalWeb Technologies LLC ("PersonalWeb") appeals from a decision of the District Court for the Northern District of California granting summary judgment of noninfringement in favor of Amazon.com, Inc., Amazon Web Services, Inc., and Twitch Interactive, Inc. (collectively, "Amazon").  *See In re PersonalWeb Techs., LLC*, No. 18-md-02834, 2020 WL 6821074 (N.D. Cal. Feb. 3, 2020)

———————————

\* Circuit Judge Sharon Prost vacated the position of Chief Judge on May 21, 2021.

("*Summary Judgment Decision*").   For   the  reasons  described below, we *affirm*.

## BACKGROUND

This is the second appeal in this case involving a multidistrict litigation consolidating cases that PersonalWeb brought against more than eighty Amazon customers.  Because we previously discussed the background of the technology at issue and the history of the case, *see In re PersonalWeb Techs. LLC*, 961 F.3d 1365 (Fed. Cir. 2020), we provide only the following brief summary.

In January 2018, PersonalWeb filed a series of lawsuits asserting that Amazon customers infringe five patents that share a common specification and claim priority from the same abandoned patent application, which was filed on April 11, 1995.  *See id.* at 1369.  The patents are generally directed to uses of what the inventors termed "True Names" for data items.  According to the patents, a "True Name" is a "'substantially unique' identifier for each data item that depend[s] only on the content of the data itself," as opposed to "other purportedly less reliable means of identifying data items, such as user-provided file names." *Id.* (citing U.S. Patent 6,928,442).

In the current appeal, only three claims are at issue: claim 20 of U.S. Patent 7,802,310 (the "'310 patent"); and claims 10–11 of U.S. Patent 6,928,442 (the "'442 patent"). Claim 20 of the '310 patent recites:

> 20. A computer-implemented method operable in a system which includes a plurality of computers, the method comprising:
>
> controlling distribution of content from a first computer to at least one other computer, in response to a request obtained by a first device in the system from a second device in the system, the first device comprising hardware including at least one processor,

> the request including at least a content-dependent name of a particular data item, the content-dependent name being based at least in part on a function of at least some of the data comprising the particular data item, wherein the function comprises a message digest function or a hash function, and wherein two identical data items will have the same content-dependent name,
>
> based at least in part on said content-dependent name of said particular data item, the first device (A) permitting the content to be provided to or accessed by the at least one other computer if it is not determined that the content is ***unauthorized or unlicensed***, otherwise, (B) if it is determined that the content is unauthorized or unlicensed, not permitting the content to be provided to or accessed by the at least one other computer.

'310 patent col. 39 ll. 8–31  (emphasis added).  Claims 10 and 11 of the '442 patent recite:

> 10. A method, in a system in which a plurality of files are distributed across a plurality of computers, the method comprising:
>
> obtaining a name for a data file, the name being based at least in part on a given function of the data, wherein the data used by the function comprises the contents of the particular file;
>
> determining, using at least the name, whether a copy of the data file is present on at least one of said computers; and
>
> determining whether a copy of the data file that is present on a at least one of said computers ***is an unauthorized copy or an unlicensed copy*** of the data file.

> 11. A method as in claim 10 further comprising: allowing the file to be provided from one of the computers having an ***authorized or licensed*** copy of the file.

'442 patent col. 41 ll. 13–27 (emphases added).

Broadly speaking, PersonalWeb's infringement allegations targeted Amazon's S3 web host servers and Amazon's CloudFront service. Amazon intervened in the actions against its customers and filed a declaratory judgment action against PersonalWeb. *See PersonalWeb*, 961 F.3d at 1372. The Judicial Panel on Multidistrict Litigation consolidated the cases in the United States District Court for the Northern District of California for pretrial proceedings. *Id.* The court decided to first proceed with Amazon's declaratory judgment action and PersonalWeb's case against one representative Amazon customer, Twitch Interactive, Inc. ("Twitch").[1] *Id.* The court stayed all other customer cases on the basis of PersonalWeb's representation that it would not be able to proceed in the other customer cases if it lost its case against Twitch. *Id.*

Because of a prior lawsuit in 2011 by PersonalWeb alleging infringement by Amazon's S3 web host servers, the district court granted partial summary judgment in favor of Amazon based on claim preclusion and the *Kessler* doctrine, which this court later affirmed. *Id.* at 1373. The litigation continued in the district court with respect to PersonalWeb's infringement allegations against Amazon's CloudFront servers. Those allegations centered on the

---

[1] Twitch is an Amazon subsidiary. Although the case against Twitch in the district court appears to have proceeded in parallel with the case against Amazon, for purposes of this appeal the noninfringement issues are identical. Therefore, unless otherwise noted, we refer to the appellees collectively as "Amazon."

servers' communication over the Internet using the Hyper-Text Transfer Protocol ("HTTP"), and specifically the cache-control functionality in the HTTP 1.1 standard.  PersonalWeb alleged that "entity tags" or "ETags" in the headers of HTTP requests and responses are an embodiment of the patented True Names.  According to PersonalWeb, the CloudFront servers infringe the patent claims by using ETags to validate whether cached copies of previously served data items are still usable or whether the data items have instead become stale and must be served again by the server.

In August 2019, the district court issued a claim construction order, construing ten disputed claim terms.  *See In re PersonalWeb Techs., LLC Patent Litig.*, N. 18-md-02834, 2019 WL 3859023 (N.D. Cal. Aug. 16, 2019) ("*Claim Construction Opinion*").  Most relevant to this appeal, the court construed the term "unauthorized or unlicensed" to mean "not compliant with a valid license."  *Id.* at *18.  Relatedly, the court construed the term "authorization" to mean "a valid license."  *Id.*  The court subsequently denied PersonalWeb's motion to clarify the claim construction order.  *In re PersonalWeb Techs., LLC*, No. 18-md-02834, 2019 WL 4837185 (N.D. Cal. Oct. 1, 2019).

Based on the district court's construction of the terms "unauthorized or unlicensed" and "authorization," PersonalWeb conceded that it could not meet its burden of proving infringement of any of the patent claims.  *See In re PersonalWeb Techs., LLC*, No. 18-md-02834, 2019 WL 7212318, at *1 (N.D. Cal. Oct. 31, 2019).  PersonalWeb then moved for entry of final judgment of noninfringement based on the court's claim constructions.  *Id.*  In view of a pending summary judgment motion that Amazon had already filed, which relied on additional noninfringement grounds beyond the court's claim constructions, the court denied PersonalWeb's motion.  *Id.* at *2.

On February 3, 2020, the district court granted Amazon's motion for summary judgment. *Summary Judgment Decision*, 2020 WL 6821074. The court considered four separate grounds of noninfringement. First the court granted Amazon's motion on the unopposed ground that Amazon's CloudFront servers do not infringe the asserted claims under the court's constructions of "unauthorized or unlicensed" and "authorization." *Id.* at *7. The court also granted Amazon's motion for summary judgment of noninfringement because the CloudFront servers do not meet limitations directed to "permitting" content to be provided or accessed, determining whether a copy of a data file "is present," or "comparing" to a plurality of identifiers. *Id.* at *7–14.

PersonalWeb appeals from the district court's grant of summary judgment. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of summary judgment according to the law of the regional circuit. *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1303 (Fed. Cir. 2015) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1377 (Fed. Cir. 2014)). In the Ninth Circuit, summary judgment is reviewed de novo, and we thus apply the standard applied by the district court. *Id.* (citing *Bos. Scientific Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1361 (Fed. Cir. 2011)). "[S]ummary judgment is appropriate when, drawing reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact." *Id.* (citing *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011)); *see also* Fed. R. Civ. P. 56(a).

In this case, PersonalWeb raises four challenges to the district court's grant of summary judgment. The parties agree, however, that an affirmance of the district court's construction of the claim term "unauthorized or

unlicensed," would dispose of the appeal in its entirety. *See* Oral Argument at 0:34–1:08; 23:48–24:20 , http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-1566_03012021.mp3. We therefore begin with that issue.

Claim construction is an issue of law that we review de novo. *Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 43 (Fed. Cir. 2020) (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318 (2015)). "The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). It is well established that a patent's written description is "the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc).

The district court construed "unauthorized or unlicensed" to mean "not complying with a valid license." The court reached that conclusion because, despite the use of the disjunctive connector "or" in the claim term, "the intrinsic record reveals that the patentee used the words 'authorized' and 'licensed' interchangeably" in the patents. *Claim Construction Opinion*, 2019 WL 3859023, at *5. The court concluded that "the specification explicitly equates holding a '**valid license**' with '**authorization**.'" *Id.* (emphases in original).

PersonalWeb's primary argument on appeal is the same as its primary argument before the district court, namely, that the court's construction fails to give meaning all of the words in the claim. According to PersonalWeb, the court's construction ignores the disjunctive "or" and reads the word "unauthorized" out of the claim. PersonalWeb further argues that the words "unauthorized" and "unlicensed" are used differently in the written description and the prosecution history, that the patents contain examples of data items that are "unauthorized" but not

necessarily "unlicensed," and that the term "unlicensed" is one species of the broader genus "unauthorized."

Amazon responds that the district court correctly found that the patents treat "unauthorized or unlicensed" as a single concept that relates to the purpose of the claimed invention, which is controlling access to licensed content. Amazon points to the mechanism described in the patents for prohibiting unauthorized parties from accessing licensed data files, which includes a "license table" that stores the name of a "licensee," defined as the "identity of a user authorized to have access" to a data file. *See* '310 patent col. 11 ll. 33–44; col. 31 ll. 3–32. Amazon contends that, although PersonalWeb has identified some examples in the written description involving permitted actions in the patented system, the patents do not use the word "authorized" in relation to any of those examples. Additionally, Amazon argues, none of those examples has anything to do with whether or not a user is authorized or licensed to access content.

We agree with Amazon that the district court's construction is correct. Beginning in the initial sentences of the abstract, the '310 patent makes clear that an object of the patented system is to use content-based identifiers for the purpose of controlling access to "licensed" content such that only "authorized" users may access it. '310 patent at Abstract ("Access to and delivery of *licensed* content is controlled using content names that were determined based on the content. . . . Access to the data item is *authorized* based at least in part on the name." (emphases added)). The patents' written description proceeds to describe the invention, interchangeably using the terms "licensed" and "authorized" to refer to the same concept.

For example, in describing a "Track for Licensing Purposes" mechanism, the patents state that "[t]his mechanism ensures that *licensed* files are not used by *unauthorized* parties." *Id.* at col. 31 ll. 4–6 (emphases

added); *see also id.* at col. 31 ll. 9–32 (using both terms to describe license enforcement and validation). Additionally, when describing the license table that stores information about files and the users licensed to access them, the patent first states:

> Each record 150 of the license table 136 records a relationship between a licensable data item and the user ***licensed*** to have access to it.

*Id.* at col. 11 ll. 33–35 (emphasis added). Immediately thereafter, the patent provides a "description" for the field in the license table that contains the "licensee":

> identity of a user ***authorized*** to have access to this object.

*Id.* at col. 11 ll. 42–43 (emphasis added). These two sentences describe precisely the same concept, using the phrase "licensed to have access" the first time and "authorized to have access" the second time.

PersonalWeb acknowledges that the two words "unauthorized" and "unlicensed" are not mutually exclusive, arguing that "unlicensed" is a subset of the broader term "unauthorized." Under PersonalWeb's argument, however, the scope of the claim term as written—"unauthorized or unlicensed"—is exactly the same as the scope would have been if the claim term instead said "unauthorized." Because a major component of PersonalWeb's challenge is that the district court read the first two words—"unauthorized or"—out of the claim term, it must be pointed out that PersonalWeb is essentially urging us to instead read the last two words—"or unlicensed"—out of the claim term. Of course, a claim construction should generally attempt to "give meaning to all the words in [the] claims," *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1557 (Fed. Cir. 1995), and avoid "reading out" words from the claim. *See Apple Computer, Inc. v. Articulate Sys., Inc.*, 234

F.3d 14, 24–25 (Fed. Cir. 2000).  "The preference for giving meaning to all terms, however, is not an inflexible rule that supersedes all other principles of claim construction." *SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 429 (Fed. Cir. 2016) (citing *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2005)).  Here, as the parties appear to agree that there is significant overlap between the words "unauthorized" and "unlicensed" as used in the patents, we agree with the district court's analysis which focused on the patentee's consistent interchangeable use of the two words "unauthorized" and "unlicensed" in the intrinsic record. *See Baran v. Medical Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010) (holding that although the use of different terms usually implies that they have different meanings, "that implication is overcome where . . . the evidence indicates that the patentee used the two terms interchangeably").

For similar reasons, we do not agree with Personal-Web's argument regarding the claim's use of the disjunctive connector "or."  If, as PersonalWeb argues, the word "unlicensed" were a species of the genus "unauthorized," then the word "or" between those two words in the claim term would be nonsensical.  We thus agree with Amazon that the disjunctive "or" in the claim is being used to connect two words that are synonyms or equivalents of each other in the patent.  To be sure, neither party cites a case in which this court has held the word "or" in a patent claim to be a connector for synonyms.  But the Supreme Court has held in the context of statutory construction that "or" can be used to connect synonyms, *see Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 255 (1994), and we have recognized that "many of the canons of statutory construction apply equally when interpreting patent claims." *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 747, 752–53 (Fed. Cir. 2016).

We also find, as the district court did, that Personal-Web lacks support in the intrinsic evidence for its argument that the patents contemplate other types of "authorization" that are unrelated to license status. *See Claim Construction Opinion*, 2019 WL 3859023, at \*6. Amazon correctly points out that, although PersonalWeb has identified individual examples of actions that may or may not be permitted in the patented system based on settings associated with data items (e.g., read-only, lock flag), none of those examples has anything to do with controlling access to licensed or authorized content. And contrary to PersonalWeb's assertion that it "does not matter" that the "specification does not use the exact word 'authorization' to describe those examples," *see* Appellant's Br. 43, the absence of the word "authorization" from those examples matters a great deal because the entire issue in dispute is the construction of a term that includes the word "unauthorized" based on the repeated use of the exact word "authorized" in the context of licensed content. If we were to infer, as PersonalWeb asks us to do, that the patent implicitly sets forth other types of authorization without using that word, we would simply be rewriting the patent specification.

Finally, we are not persuaded by PersonalWeb's argument about claim differentiation and the prosecution history. PersonalWeb suggests that because some claims in the True Name patent family use the term "unauthorized or unlicensed," others use the term "unauthorized," and others use the term "unlicensed," we should interpret those phrases to have different meanings. PersonalWeb points to an example in the prosecution history in which the patentee amended a claim from "unauthorized or unlicensed" to "unauthorized" as evidence that the patentee understood the two terms to have different scope. *See* J.A. 3409–10. But, again, according to the genus/species argument that PersonalWeb is advancing in this appeal, a claim that recites "unauthorized or unlicensed" would actually have the

same scope—*i.e.*, not different scope—as a claim that merely says "unauthorized."  Moreover, under Personal-Web's argument, the identified claim amendment would have had no substantive effect on the scope of the amended claim.  Thus, PersonalWeb's selectively applied claim differentiation argument is self-defeating, and we will not prioritize unclear portions of the prosecution history over the clarity with which the terms "authorized" and "licensed" are used interchangeably in the written description.  *See Phillips*, 414 F.3d at 1317 ("[B]ecause the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes.").

For the foregoing reasons, we conclude that the district court correctly construed the term "unauthorized or unlicensed" to mean "not complying with a valid license."  Under that claim construction, PersonalWeb has conceded that it cannot meet its burden of proving that Amazon infringes any patent claims in the True Name patent family.  Because the claim construction issue is dispositive of the entire appeal, we need not reach any of the other issues in this case.  Accordingly, we hold that the district court correctly granted summary judgment in favor of Amazon.

## CONCLUSION

We have considered PersonalWeb's remaining arguments but we find them unpersuasive.  The judgment of the district court is *affirmed*.

**AFFIRMED**