NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WSOU INVESTMENTS LLC, DBA BRAZOS LICENSING AND DEVELOPMENT,**
*Appellant*

**v.**

**ARISTA NETWORKS, INC.,**
*Appellee*

---

2023-2231

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2022-00231.

---

Decided:  March 10, 2025

---

BRETT AARON MANGRUM, Cherry Johnson Siegmund James, PLLC, Waco, TX, argued for appellant.  Also represented by SEAN D. BURDICK, Burdick Patents, PA, Boise, ID.

AMIT MAKKER, Latham & Watkins LLP, San Francisco, CA, argued for appellee.  Also represented by GABRIEL K. BELL, Washington, DC; RICHARD GREGORY FRENKEL,

DOUGLAS ETHAN LUMISH, Menlo Park, CA; JEFFREY G. HOMRIG, Austin, TX.

———————————

Before LOURIE, BRYSON, and STARK, *Circuit Judges.*

LOURIE, *Circuit Judge.*

WSOU Investments LLC ("WSOU") appeals from the final written decision of the U.S. Patent Trial and Appeal Board ("the Board") holding claims 1–6 and 12–17 of U.S. Patent 8,472,447 ("the '447 patent") unpatentable as obvious over the combination of U.S. Patent 8,204,061 ("Sane") and U.S. Patent 8,654,680 ("Subramanian"). *Arista Networks, Inc. v. WSOU Invs., LLC*, No. IPR2022-00231, 2023 WL 5033118 (P.T.A.B. May 30, 2023) ("*Decision*"). We *affirm.*

The '447 patent is directed to aggregation switches that perform IP multicast snooping. Claim 1, which is representative for purposes of this appeal, recites:

1. An aggregation switch in a multi-chassis system for performing Internet Protocol (IP) multicast snooping, comprising:

a plurality of virtual fabric link (VFL) ports coupled to a VFL, wherein the VFL is connected to a remote aggregation switch, wherein the remote aggregation switch is active and in a separate physical chassis;

a plurality of external ports coupled to at least one edge node and at least one network node;

*a database maintaining IP multicast snooping information*; and

a chassis management module for receiving the snooping information via at least the external ports, *storing* the snooping

> information within the database and *sharing* the snooping information substantially in real-time with the remote aggregation switch via the VFL;
>
> wherein the chassis management module further builds respective forwarding vectors for multicast traffic flows received from the at least one network node via the external ports or the VLF [sic] ports based on the snooping information;
>
> *wherein the chassis management module further determines a multicast index* for a received multicast traffic flow to set-up hardware paths for forwarding the received multicast traffic flow to the external ports in a virtual local area network (VLAN) that requested the received multicast traffic flow via the at least one edge node, the multicast index being used globally between the aggregation switch and the remote aggregation switch.

'447 patent, col. 27 ll. 2–31 (emphases added).

WSOU argues that the Board's findings that (1) Sane discloses the claimed "database maintaining IP multicast snooping information" and that (2) the combination of Sane and Subramanian discloses the claimed chassis management module that "determines a multicast index" were not supported by substantial evidence. Specifically, WSOU argues that the Board misconstrued "maintaining," which, in its view, "does not mean 'storing' or 'sharing'" as later recited in the claims. *See* WSOU Br. 17–27. WSOU admits, however, that it has never proposed an affirmative construction of that term. *Id.* at 17. As for the "chassis management module" that "determines a multicast index," WSOU argues that the Board's finding that the

combination of Sane and Subramanian discloses that limitation lacked adequate support. *See id.* at 33–37.

Arista Networks, Inc. ("Arista") argues that the Board's finding that Sane teaches the claimed database was supported by substantial evidence and that WSOU's attempt to recast the dispute into one of claim construction is untimely and misguided. Arista Br. 26–38. Arista further argues that the Board's finding that the combination of Sane and Subramanian teaches a "chassis management module" that "determines a multicast index" was supported by substantial evidence. *Id.* at 41–46. We agree with Arista.

First, with respect to the "database maintaining IP multicast snooping information" limitation, the Board cited Sane's disclosure that its switches each include an MCEC manager that "provides [a] repository of MCEC configuration and running status" and "exchanges configuration information between MCEC switches." *Decision*, at *10 (citing Sane, col 4 ll. 48–56). The Board also cited and found credible expert testimony that a person of ordinary skill in the art would have known that, at the time of the invention, switches such as Sane's "stor[ed] snooped packets and/or their information in a database," as that was "common to virtually all IGMP snooping implementation" at the time. *Id.* (quoting J.A. 1550 ¶ 57). That is substantial evidence that supports the Board's determination that the claimed "database maintaining IP multicast snooping information" reads on Sane's MCEC manager.

WSOU's attempt to manufacture a claim construction dispute as to the term "maintaining" is both untimely and meritless. WSOU has never proposed an affirmative construction for this term, and instead only ever argued that the term is distinct from "storing" and "sharing." WSOU Br. 17. Even if timely, that is an improper application of claim differentiation, which "is not an inflexible rule that supersedes all other principles of claim construction." *SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB,*

820 F.3d 419, 429 (Fed. Cir. 2016). We are unpersuaded by WSOU's argument, which takes the individual words "maintaining," "storing," and "sharing" outside the context of the claims. The argument is particularly unpersuasive where WSOU has provided no indication of what "maintaining" affirmatively means, let alone how that meaning would have changed the Board's analysis.

The Board's finding that the combination of Sane and Subramanian teaches the claimed "chassis management module" that "determines a multicast index" was, too, supported by substantial evidence. Specifically, the Board explained that the claimed "chassis management module" maps to Sane's "control plane," which performs IGMP snooping and forwards traffic to appropriate ports using an outgoing interface list, or "oif-list." *See Decision*, at *14. Although Sane does not disclose how the oif-list is programmed, the Board found that Subramanian does. In Subramanian's switches, each multicast traffic flow is associated with two unique identifiers, "MGID" and "EPI," used to determine how to forward the information. *Id.* at *15. As unrebutted expert testimony established, MGID and EPI would have been known by a person of ordinary skill in the art to be "multicast indexes." *Id.* Accordingly, the Board's finding that it would have been obvious to modify Sane's control plane to include Subramanian's multicast indexes to arrive at the claimed "chassis management module" that "determines a multicast index" was supported by substantial evidence.

We have considered WSOU's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the final written decision of the Board.

**AFFIRMED**